## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**BENSCO ONE, LLC**                                        **CIVIL ACTION**

**VERSUS**                                                 **NO. 06-1591**

**VOLKSWAGEN OF AMERICA, INC.**                            **SECTION "T" (1)**

<u>**ORDER AND REASONS**</u>

Before the Court is Defendant's Motion for Summary Judgment.  Rec. Doc. 46.  Plaintiff filed an Opposition.  Rec. Doc. 66.  The Motion came for hearing with oral argument on January 17, 2008, and was taken under submission.  The Court, after considering the memoranda and arguments of the parties, the record, the law, and applicable jurisprudence is fully advised in the premises and ready to rule.

## I.      BACKGROUND

This action arises out a dispute between Bensco One, LLC (herienafter, "Bensco") and Volkswagen of America, Inc. (hereinafter, "VW") relating to the dealership agreement between these two parties.  In February 2003, Tom Benson entered into an agreement to purchase Crescent City Motors, a dealership selling Volkswagen, Saab, Porsche, and Audi vehicles.  Crescent City Motors was located at 3000 Tulane Avenue in New Orleans.  The Benson organization closed on its purchase of Crescent City Motors and entered into the Volkswagen Dealer Sales and Service Agreement (hereinafter, "the Agreement").  The Saab and Volkswagen franchises remained at Tulane Ave and the other franchises moved to Metairie.

The Agreement provided, *inter alia*, that Bensco would become an authorized dealer in VW brand motor vehicles and genuine parts and accessories doing business as Benson Volkswagen. Rec. Doc. 18 at paragraph 7.  Thereafter, the dealership began to operate as "Benson Volkswagen." In addition, Bensco entered into a lease with VW (the owner of the property located at 3000 Tulane

Avenue).  The lease contained a provision providing that VW could either terminate the lease or restore the property to its original condition in the event the premises is "substantially damaged or rendered untenantble by fire or other occurrence." *See* VW Statement of Facts at paragraph 7 and Exhibit "C" attached thereto.

At some point after the lease was signed, there was discussion between the Benson organization and others about selling the VW dealership.  VW claims the sale initiated because Bensco did not want the VW dealership while Bensco contends that sale was just one option in a host of options it was considering to make more money.  Nevertheless, the business did not sell and was owned by Bensco and being operated at 3000 Tulane Avenue when Hurricane Katrina hit.

During Katrina, Benson VW was inundated by flood waters.  On September 28, 2005, Bensco requested that it be allowed to temporarily sell and service Volkswagens from its Audi operations in Metairie.  That same day, representatives from Bensco and VW agreed that Bensco would be allowed to temporarily operate in Metairie while assembling its VW employees for a period of 30 days or until October 27, 2005.  This agreement was confirmed in writing on October 3, 2005.  This correspondence also requested Bensco provide a long term and short term plan for re-opening within its Area of Operation (AOR), an area that did not include the Metairie location.

In conjunction with the move to Metairie, Bensco moved its VW inventory, put up signs announcing the new location and worked to salvage its supply of VW parts.  VW's decision to allow Bensco to operate in Metairie upset the owners of Walker Volkswagen, the VW dealership located on Veterans in Metairie about four (4) miles from the new VW Benson dealership.  VW representatives contend they did not intend nor want Bensco to operate the VW facility in Metairie for longer than 30 days because it was bad business to have two (2) dealers so close and it leaves

customers in other areas without convenient service.  Accordingly, VW contends the move was only temporary.

On October 5, 2005, the Louisiana Motor Vehicle Commission issued a cease and desist order to Bensco ordering it to stop VW operations on Veterans because it was operating outside of its manufacturer-assigned AOR.  A Temporary Restraining Order was filed by Bensco in state court and was granted preventing enforcement of the Commission's order.

Bensco submits, based upon the October 3, 2005, letter from VW, that it understood that if it could obtain the other Volkswagen dealer's waiver of any objections to the temporary Metairie location beyond October 27, 2005, then it would be able to remain at that location.  Rec. Doc. 1 at paragraph 10.  As such, Bensco obtained this consent and advised VW that the owner of Walker VW had been contacted and did not object to this extension of Benson's VW operations on Veterans. Rec. Doc. 1 at paragraph 10.  On October 12, 2005, Bensco's lawyer informed VW that it had located a facility on the Westbank (within Benson's AOR)that could accommodate a dealership immediately.  This letter also stated that Bensco would sell the franchise back to VW for $1 million dollars.  On October 18, 2005, VW representatives and Bensco's lawyer spoke and it was learned that Bensco did not want to operate on the Westbank but wanted to operate on Veterans outside its AOR for an additional sixty (60) days.  VW denied the sixty (60) day request, despite Walker's consent, asserting that the other's dealer's rights might be violated.  However, VW stated that it would support operations at the Westbank facility.  VW also denied the offer to buy back the franchise.

On October 19, 2005, VW cancelled its lease with Bensco in accordance with the substanial damage clause cited *supra*.  VW maintained that the property was a total loss and that the

termination would be effective October 29, 2005.  Prior to the lease cancellation, VW representatives met with area dealers to discuss the situation at the Louisiana dealerships.  A Bensco representative was not present at that meeting and Bensco claims they were not informed of the meeting.  Bensco also alleges that it did not receive any forewarning that VW was considering termination of the lease.  Rec. Doc. 1 at paragraph 11.

On November 2, 2005, November 23, 2005, and December 16, 2005,VW sent letters to Bensco requesting a plan for operations within its AOR noting the Westbank facility as a possible solution.  No response was received.  On January 20, 2006, VW terminated Bensco's Dealer agreement.

This action ensued against VW alleging: (1) violations of the Automobile Dealer's Day in Court ("ADDC") statute, 15 U.S.C.A. § 1220, *et seq*, based upon VW's alleged failure to act in good faith, its intimidating, coercive, and bad faith conduct in terminating the lease and making unreasonable demands upon Bensco; (2) intentional and bad faith breach of the Agreement; (3) Violation of Louisiana Motor Vehicle Statutes LSA-R.S. § 32:1251, *et seq.,* based upon VW's intimidating, coercive, and bad faith conduct; (4) detrimental reliance because VW knew or should have known, based upon its October 3, 2005 letter, that Bensco would reasonably expect to continue operating from its temporary location provided Bensco could obtain consent of other VW dealers in the area and was thereafter, damaged by VW's actions; and (4) violations of Louisiana's Unfair Trade Practices & Consumer Protection Act, LSA-R.S. 51: 1401, *et seq*.  Rec. Doc. 1.

Bensco amended its Complaint to add allegations that VW violated LSA-R.S.§ 32:1268. Under that statute, Bensco asserts that VW has an obligation to repurchase new vehicles and parts from Bensco's inventory when the franchise is terminated within thirty (30) days of VW's receipt

4

of notice to repurchase.  Rec. Doc. 18 at paragraphs 5, 18.  Bensco submits it sent notice, registered mail, including a final inventory of motor vehicles and parts on hand to VW on April 26, 2006.  The notice, Bensco submits, was received May 12, 2006.  Rec. Doc. 18 at paragraphs 17, 18.  However, Bensco alleges payment was not received until October 4, 2006, for the new vehicles (minus damage repair costs) and that it has not received payment for parts on hand.  Bensco also submits that the Agreement requires VW to repurchase all new current models within ninety (90) days of termination.  Rec. Doc. 18 at paragraphs 18-19.

VW's Motion for Summary Judgment followed requesting dismissal of each of the claims raised in the original and amended Complaints.

## II.     LAW AND ANALYSIS

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56.  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) *citing, Skotak v. Tenneco Resins, Inc*., 953 F.2d 909, 912-13 (5th Cir.).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  *See Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).  Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress

his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib.*, Inc., 819 F.2d 547, 549 (5th Cir. 1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255.

> *(1)*     ***ADDCA causes of action.***

The Automobile Dealers' Day in Court Act provides, in pertinent part:

> An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the **failure of said automobile manufacturer from and after August 8, 1956, to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer**: Provided, That in any such suit the manufacturer shall not be barred from asserting in defense of any such action the failure of the dealer to act in good faith.

15 U.S.C.A. § 1222 (emphasis added)

"Good faith" is defined at 15 U.S.C.A. § 1221 (e) as:

> The term "good faith" shall mean the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, That recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C.A. § 1222 (e).

To prevail under the statute, a finding must be made that VW lacked good faith in performing or complying with any of the terms of the franchise or in terminating, canceling, or not renewing the franchise with Bensco. "Good faith" has a limited and restricted meaning under the Act and is not to be construed liberally. *Crescent City M Dealership, L.L.C. v. Mazda Motor of America, Inc.*, 2000 WL 1372965, (E.D. La. 2000)(Vance, J.) The Act does not mean "good faith" in a hazy or general

way; nor does it mean unfairness.  The existence or nonexistence of "good faith" must be determined in the context of actual or threatened coercion or intimidation.  *Crescent City, 2000 WL 1372965*5* (citations omitted).  Moreover, in order to lack good faith, the manufacturer's actions must be unfair and inequitable in addition to being for the purpose of coercion and intimidation.  *Crescent City,* 2000 WL 1372965 *5 *citing, Randy's Studebaker Sales, Inc. v. Nissan Motor Corp*., 533 F.2d 510(10th Cir.1976).  Coercion or intimidation must include a· wrongful demand that will result in sanctions if not complied with.  *Crescent City,* 2000 WL 1372965 *5 *citing, Fray Chevrolet Sales, Inc. v. General Motors Corp*., 536 F.2d 683 (6th Cir.1976).  The Court must consider not only whether or not the manufacturer brought pressure to bear on the dealer, but also his reason for doing so. *Crescent City,* 2000 WL 1372965 *5 *citing, Rea v. Overseas Motors, Inc. V. Import Motors Limited*, 519F.2d 119, 124 (6th Cir. 1975).

In accordance with the foregoing principles, this Court must determine if the undisputed facts show VW's actions were fair and equitable and were not for the purpose of coercion and intimidation. *See Crescent City, 2000 WL 1372965*5* .  Under the coercion and intimidation prong, the Court must decide whether there was a wrongful demand that would result in some sanction if not complied with. *Crescent City, 2000 WL 1372965*5.*  Something more than just persuasion, obstinance, or even threats must be proved.  In addition, Defendant must withhold something of value to get something wrongfully demanded.  This type of coercion requires more than merely requiring plaintiff to abide by the contract.  *Crescent City,* 2000 WL 1372965 *5-6.

This Court assumes, without deciding, that VW's November 2, 2005, November 23, 2005 and December16, 2005, requests amount to a demand.  The issue now becomes whether the demands were wrongful because they were enforced by threats of coercion and intimidation.  VW contends

7

that the requests were not wrongful because it had a contractual right under the Agreement to require Bensco to represent it and service VW vehicles at some location within the applicable AOR.  Rec. Doc.  47.  Bensco counters that even if VW exercised its rights under the agreement, VW had to exercise that right in "good faith."  They argue there is an issue of fact as to VW's "good faith" because VW's demands were unreasonable and impossible in light of Hurricane Katrina and because VW had "improper motive;" namely, assisting another "favored" VW dealership by eliminating its competition, Benson.  Rec. Doc. 66 at pp. 18-20.

In *Crescent City,* Judge Vance was faced with a Motion to Dismiss an ADDCA claim by a defendant claiming it acted in good faith in its dealings with the plaintiff dealership.  Crescent City purchased a Mazda franchise and requested that Mazda allow it to operate as a dual franchise.  The franchise ownership was subject to Mazada's approval.  The dual franchise request was denied by Mazda.  The denial was included in the letter of intent signed by plaintiff.  The dealer claimed it was coerced into signing the agreement and claimed it suffered losses as a result of operating the exclusive dealership and requested dual dealership status again.  Mazda again denied the request.  A year later, plaintiff terminated its franchise and claimed it was forced to do so and sell the dealership to minimize losses.  *Crescent City,* 2000 WL 1372965 *1.

In her discussion of the ADDCA claims, Judge Vance found that the dealer had every right and several opportunities to convince Mazda to alter the contract or waive its provisions to permit a dual dealership; however, Mazda had every right to deny these requests and to enforce the contract as written.  Judge Vance found Mazda's refusal as not amounting to coercion or bad faith under the ADDCA definition. Although plaintiff used the word 'coercion,' Judge Vance found that the allegations did not state any actions that amount to coercion. *Crescent City,* 2000 WL 1372965, *6.

8

Accordingly, Judge Vance dismissed the ADDA claims for failure to state a claim.

Under Judge Vance's interpretation of the ADDA, an allegation that a manufacturer refused to act is not coercion if it had the right to do so under its written agreement.  Plaintiff attempts to side-step Judge Vance's opinion in *Crescent City* by arguing that when a manufacturer's actions are "arbitrary or unreasonable" (even in enforcing its own contract) bad faith is inferred.  Rec. Doc. 66 at p. 18.  When there is bad faith, Bensco asserts the ADDCA is inapplicable.  In support, Plaintiff cites the Seventh Circuit's decision in *ShorLine Rambler, Inc. v. American Motor Sales Corp*., 543 F. 2d 601 (7th Cir. 1976).  In *Shor-line*, the evidence showed that over the long history between the dealer and the manufacturer, the franchise was renewed a number of times.  During the last renewal the manufacturer represented to the dealer that the office space it had was adequate.  Soon thereafter, the manufacturer changed its marketing strategy and included a demand that the dealer, within ninety (90) days: (1) attain his planning potential of 360 cars; (2) increase his wholesale credit line and maintain a 60-unit new car inventory; (3) acquire a used car lot and new car storage facilities; (4) hire a full-time sales manager; (5) hire and train four additional salesmen; (6) participate the manufacturer's loaner program; and (7) participate in the manufacturer's corporate identity program.  *Shor-Line,* 543 F. 2d at 603.  The dealer's facilities were also deemed sub-standard and it was told to attempt to negotiate a lease on certain other facilities that were then available.  The dealer attempted to comply, but ultimately was not able to; therefore, the agreement was terminated.  The Seventh Circuit found that the demands made upon the dealer were unreasonable and unrealistic.  The court further found that the issue of the manufacturer's bad faith involves its "intentions as manifested by its actions."  Therefore, despite evidence presented to the jury that the actions of the manufacturer were justified, the court upheld the jury's fact findings that the actions demonstrated

the manufacturer's bad faith.  *Shore-Line*, 543 F. 2d at 604.

The *Shor-Line* case is from the Seventh Circuit and has no precedential value in this Circuit. Additionally in *Hubbard v. General Motors Corporation*, 873 F. 2d 873, 878 (5th Cir. 1989), the Fifth Circuit rejected a broader definition of "good faith" to include arbitrary conduct that does not rise to the level of coercion or intimidation.  In any event, *Shor-Line* is factually distinguishable as the conditions imposed by VW upon Bensco in this matter are not as onerous or as imposing as those placed upon the dealer in *Shore-Line*.  Additionally, even accepting the Seventh Circuit's inferred bad faith theory, Plaintiff has not met its burden.  Stated differently, Plaintiff cannot not defeat summary judgment with their inferred bad faith argument as they have not presented competent factual evidence to create a genuine issue of fact regarding  VW's "good faith" in the termination of the agreement.  In support of inferred bad faith theory and purported arbitrary action, Bensco asserts that "VW knew or should have know that it would be impossible for Bensco to comply with its demands under the circumstances" after the Hurricane and "VW's intentions were manifested by its imposition of demands that, considering all of the circumstances, were unreasonable and impossible for Bensco to meet."  Rec. Doc. 66. at p. 19.  While Bensco makes these conclusory statements in their Opposition, they submit no competent evidence in support.  As VW correctly points in their reply memorandum, Bensco's Opposition lacks support for its statement that the conditions imposed by VW were impossible.  Bensco was given from October 3, 2005 until January20, 2006 to submit "a proposed plan" to VW.  Bensco claims it could not create a plan because of Hurricane Katrina but submits no explanation why a plan was impossible to create due to the storm.  Further, Bensco provides no explanation why it failed to respond to the requests for a plan or even to request an extension to submit a plan.  In addition, Bencso has not demonstrated why it was impossible to secure

another facility within its AOR. The record reflects that there was a facility on the Westbank available and there is uncontested testimony that Bensco, despite requests to do so, did not start looking for another facility until February 2006.  Bensco relies heavily on Hurricane Katrina in support of its impossibility argument; however, as there is not any evidence submitted demonstrating why the hurricane made it impossible for Bensco to act in accordance with the Agreement nor evidence demonstrating why the conditions requested were unreasonable, the Court rejects Bensco's bad faith argument.

Bensco also asserts that if a manufacturer's actions, although authorized by contract, are found to be "improper" the bad faith inference under the ADDCA is supported.  Rec. Doc. 66 at p. 19.  This "improper motive" argument also lacks merit.  Bensco argues VW's motives were improper because VW favored another VW dealer, Walker VW, and thus, eliminated Walker VW's competition by terminating Bensco's Agreement.  In support, Plaintiff asserts the following actions show improper motive: (1) VW gave Walker VW and its sister dealership $100,000 post-hurricane despite rejecting Bensco's request for assistance, citing company policy; (2) unquestionably supporting Walker's relocation to another dealership while at the same time refusing to allow Bensco to relocate; and (3) Walker VW expressed interest in buying Walker VW "for the sole purpose of eliminating" the Benson VW dealership.  Rec. Doc. 66 at p. 20.  Facts one and two have no evidence attached to Plaintiff's Opposition to support them; nevertheless, they are immaterial because while perhaps showing favoritism do not show improper motive or an intent to eliminate Bensco VW.  Plaintiff admits the two dealers were in separate AOR's; thus, the competition argument is not convincing.  Finally, fact three, while supported by deposition testimony, points to Walker's intent, not VW's and therefore is immaterial.  For these reasons, the court rejects the "improper motive" bad

faith inferred theory.

Finally, the Court finds that the demands do not amount to coercion or intimidation.  VW asked Bensco to do that which was required by the Agreement, namely find a location in your AOR to put your dealership.  The evidence shows that the Agreement allowed VW to make that request and if Bensco failed to comply, the Agreement could be terminated.  Following Judge Vance's analysis in *Crescent City*, VW had every right to deny Bensco its request to operate outside its AOR, to demand a plan of action, to demand the franchise operate in its AOR, and to enforce the contract as written.  When the contract was not complied with, the Agreement was terminated.  Such actions by VW within their rights provided by the Agreement are not coercion or intimidation as envisioned by the ADDCA.  Accordingly, the Court finds that there are no genuine issues of material fact as to the ADDCA claim and **GRANTS** summary judgment in favor of VW on this cause of action.

### *(2)      Breach of Contract.*

While VW argues that Plaintiff has not proved a constructive termination cause of action under Louisiana law,  Bensco claims that they are not alleging wrongful constructive termination theory, but are asserting an actual wrongful termination claim.  Hence, to the extent Bensco seeks breach of contract based upon constructive termination of the contract, summary judgment is **GRANTED.**  The Court addresses the remaining breach of contract claims hereafter.

VW asserts at all times it acted in accordance with the Agreement and therefore, did not wrongfully terminate the franchise as a matter of law.  Additionally, it asserts it did not breach the Agreement by failing to buy back the VW vehicle stock because it was damaged; nevertheless, VW bought the inventory, less the cost of repairing the damage.  Therefore, VW asserts this breach of contract claim should be dismissed as a matter of law.

Bensco responds by asserting new breaches of the Agreement in addition to asserting its claim for wrongful termination.  Bensco first argues that under the terms of the Dealer Agreement, VW must "[a]void all discourteous, deceptive, misleading, unprofessional or unethical practices."  *See* Bensco Statement of Contested Facts attached to Rec. Doc. 66 at p. 12 and exhibits attached thereto. Bensco alleges VW breached this provision by acting in the following "discourteous, deceptive, misleading, unprofessional or unethical" manner: engaging in preferential treatment; changing its "story" on its reasons why it had "no choice" but to deny Bensco to remain at the temporary location past October 27, 2005; and VW's unreasonable insistence on Bensco complying with its impossible demands. Rec. Doc.66 at p. 22.

VW counters that this allegation for breach of contract was alleged for the first time in this motion.  Since discovery and the deadline to amend pleadings is over, VW argues that Bensco should not be able to amend to add new allegations. The Court agrees.  The parties agreed to a new September 2008 trial date and new scheduling deadlines on November 26, 2007.  Rec. Doc. 63.  The new Scheduling Order specifically provides that discovery is closed.  Prior to this Motion, the Court record is void of any allegations or suggestion of allegations that Bensco was challenging any other portion of the Agreement at issue other than whether or not VW actions were unreasonable and in bad faith as it relates to the termination of the Agreement.  There was not any indication that this particular provision of the agreement would be invoked by Plaintiff.  At this stage of the litigation the Court finds substantial prejudice and delay would result in allowing Plaintiff to amend this action and reopen discovery.  Thus, these breach of contract claims are dismissed without prejudice.

Bensco next argues that VW has an obligation to perform its contracts in "good faith."  Thus, even though the Agreement allowed VW to withhold its consent for a dealer to operate at a location,

13

Bensco argues that VW's withholding consent was not in good faith but rather was arbitrary, unreasonable and in bad faith; therefore, VW is still liable to Bensco.  Rec. Doc. 66 at p. 22.

Louisiana recognizes an implied covenant of good faith and fair dealing in every contract. *Brill v. Catfish Shales of America*, 727 F. Supp. 1035, 1039 (E.D. La. 1989); *Bonanza Int'l, Inc. v. Restaurant Management Consultants, Inc.*, 625 F. Supp. 1431, 1445 (E.D. La. 1986).  However,"[t]he implied obligation to execute a contract in good faith usually modifies the express terms of the contract and should not be used to override or contradict them."  *Clark v. America's Favorite Chicken Co.* 110 F.3d 295, *297 (5th 1997)(citations omitted).  The plaintiff franchisee in the *Clark* case argued that the franchisor failed to perform the contract in good faith when it installed competing franchises in the plaintiff's territory.  The court reviewed the contract, found that it expressly gave the franchisor the right to open competing franchises in the territory, and held that "[the franchisee] cannot now be heard to argue that actions expressly authorized by this provision constitute a breach of the implied covenant of good faith and fair dealing."  *Clark,* 110 F. 3d at 297.  The case cited by Bensco is in accord.  *See Amoco Prod. Co. v. Tx. Meridian Res. Expl., Inc.*, 180 F.3d 664, 669-670 (5th Cir. 1999) (rejecting good faith argument when Amoco's actions were expressly permitted by contract.)

The parties do not dispute that the express terms of the contract gives VW the authority to withhold consent for Bensco to "establish any additional premises for Dealer's Operations."  *See* Exhibit "F" attached to Bensco's statement of facts, Rec. Doc. 66 at paragraph 6.  Because VW's actions are expressly permitted by the Agreement, without reservation, the Motion for Summary Judgment is **GRANTED**  as to this issue.

The next issue is whether VW wrongfully terminated the dealer agreement and in turn,

breached that contract.  VW argues it did not wrongfully terminate the agreement because it acted within its rights to terminate when Bensco did not perform as stated in the Agreement.  Bensco counters that it was impossible for it to perform under the contract because VW acted to thwart Bensco's efforts to resume the operations and therefore, caused Bensco to breach the contract.  Rec. Doc. 66 at pp. 23-25.  The record does not support Bensco's argument.

In the ADDCA section of this opinion, the Court found that the facts stated in support of Bensco's statement that the conditions imposed by VW were impossible lacked any evidentiary support sufficient to defeat summary judgment.  Bensco is re-urging that same argument in this section; in sum, VW made it impossible for Bensco to comply because of the unreasonable conditions imposed.  However, Bensco has failed in demonstrating that there are disputed facts about impossibility as the record reveals performance was possible at the Westbank location, yet Bensco laid idle.  *See* VW's Statement of Facts at paragraph 57 attached to Rec. Doc. 46 and Exhibit "D" attached thereto at pp. 67-68.  "If performance is still possible in spite of the obstacle, the obligor must fulfill his obligation at any cost, whatever the sacrifice.... [Obligors] are supposed to apply the totality of their resources, even to face ruin if necessary, in order to honor their promises." See  *U.S. Bancorp Equipment Finance, Inc. v. Loews Exp. L.L.C.* 2008 WL 108666, 5 (E.D. La. 2008)(Duval, J) *citing* Saul Litvinoff, *The Law of Obligations* § 16.17, 5 Louisiana Civil Law Treatise (2d ed. 2001).  Bensco has failed to point to competent summary judgment evidence demonstrating why performance was impossible.  Accordingly, the Court finds that the termination of the Agreement was not wrongful and summary judgment is **GRANTED** to VW on this issue.

The last purported breach of the Agreement deals with the repurchasing of vehicles and VW parts post-termination. The dealer agreement provides that "all new, undamaged, and current model

year" vehicles would be repurchased within 90 days of termination.  *See* Exhibit "B" attached to Rec. Doc. 46 at pp. 37-38.  Bensco argues that the vehicles were not damaged while in its possession as they were moved from the lot to a higher location prior to the Hurricane and remained unscathed. Rec. Doc. 66 at p. 25.  Thus, it asserts that there is a question of fact about the damage to the vehicles and further, blames VW if there was damage to the vehicles post-Hurricane because they failed to allow Bensco to show the cars at its temporary Veterans location.  Rec. Doc. 66 at pp. 25-26.

The Agreement is clear that the dealer will sell to VW "[a]ll new undamaged current model year [cars]."  *See* Exhibit "B" attached to Rec. Doc. 46 at pp. 37-38.  Hence, to the extent the vehicles were damaged, VW did not have to pay anything and did not breach the contract for failing to pay. Further, Bensco, while conclusively stating the vehicles were not damaged, has not put forth any evidence to combat VW's evidence that vehicles were damaged.  Thus, Bensco failed to meet its burden on summary judgment.  Nevertheless, the record discloses VW did pay over a million dollars to Bensco for the inventory left at the time of termination minus $30,000 for repair costs.  Insofar as Bensco made any breach of contract claim for VW's alleged failure to timely buy back VW parts, that action has been abandoned by Bensco and is moot because VW paid approximately $22,000 to Bensco for the parts.  Accordingly, summary judgment is **GRANTED** on the breach of contract claim for failure to buy back the vehicle inventory and parts in favor of VW.

### (3)    *Louisiana Motor Vehicle Act, LSA-R.S. 32: 1251, et seq.*

Plaintiff's allege VW violated the Louisiana Motor Vehicle Act.[1]  In *Crescent City*, Judge Vance, after reviewing the statutory scheme/purpose of the Louisiana Motor Vehicle Act found that there is no private right of action under the statute as the Act empowers only the Louisiana Motor

---

[1]Specifically, Plaintiff's Amended Complaint alleges violations of Section 1261and 11268 of the Act.

Vehicle Commission.  *Crescent City,* 2000 WL 137965 *2; *See also* LSA-R.S. 32: 1254; 1256.  The same argument Plaintiff makes here, namely that several other courts have allowed private actions to go forward by those other than Commission and therefore, courts have implied a private right of action under the Act, was considered and expressly rejected by Judge Vance.  Judge Vance stated "given the lack of precedent or statutory language creating a private right of action and the enforcement scheme established in the statute, the Court concludes that plaintiff has no standing to sue under the LMVA."  *Crescent City*, 2000 WL 137965 *2.

This Court agrees with Judge Vance's analysis in *Crescent City*.  As Bensco has presented no new and compelling reason for this Court to decline to follow Judge Vance's decision, summary judgment is **GRANTED** in favor of VW on all of the Louisiana Motor Vehicle Act claims.

> ### (4)     *The Louisiana Unfair Trade Practices Act, LSA-R.S. 51: 1401*, *et seq.* *("LUPTA")*

The United States Fifth Circuit has held that to have standing under LUTPA, one must demonstrate that it is either: (a) a consumer or (b) a business competitor of another.  *Tubos de Acero de Mexico, S.A. v. American Intern. lnv. Corp.,* Inc. 292 F.3d 471 ,480 (5th Cir. 2002);  *Orthopedic& Sports Injury Clinic, v. Wang Laboratories, Inc.*, 922 F.2d 220 (5th Cir.1991).  These cases take a narrow interpretation of LUPTA and in accordance with that interpretation, courts following suit have held that franchise dealers, such as Bensco, do not have standing to sue a distributor for violations of LUPTA.  *See Watercraft Management LLC v. Mercury Marine, Div.* of Brunswick Corp. 191. F.Supp.2d 709, 716 (M.D. La. 2001)(The relationship between the plaintiffs and Mercury Marine is that of distributor and dealer, thus they are not competitors within the meaning of LUTPA); *Delta Truck& Tractor, Inc. v. J.I. Case Co.*, 975F.2d 1192, 1205 (5th Cir.1992)(finding that franchise dealer does not qualify as either a consumer or a business competitor vis a-vis either its seller or

buyer and therefore, its claims do not fall within the ambit of LUPTA).

Bensco cites to a list of Louisiana cases that paint a broader application of LUPTA such that it applies to "any person who suffers any ascertainable loss... as a result of the employment by another person of an unfair or deceptive method, act or practice."  Rec. Doc. 66 at pp. 29-30.  Bensco states these state court cases have the better reasoning, as they are based directly on the text of the statute rather than conjecture about the statute's purpose or inferences drawn from parallel provisions. Rec. Doc. 66 at . 30.

In *Hamilton v. Business Partners, Inc.* 938 F. Supp. 370, *373 (E.D. La. 1996), Judge Berrigan stated her opinion that 5th Circuit's interpretation of LUPTA may be too narrow.  However, given the conflicting messages about LUTPA's scope in the state appellate courts with no state supreme court decision rendering the definitive answer, she followed the 5th Circuit's interpretation. In November 2007, Judge Berrigan revisited this issue again and stated that reconsideration of the Fifth Circuit's opinion on LUPTA may be in order, especially in light of the recent expansive language offered by the Louisiana Court of Appeals. However, because the Fifth Circuit precedent stands, she found that she is prevented from entertaining claims by plaintiffs who are not consumers or business competitors under the statute.  *See Higbee Co. v. Greater Lakeside Corp.* 2007 WL 3275142, *2 (E.D. La.2007).

Like Judge Berrigan, this Court is obligated to follow the 5th Circuit precedent.  As the existing state court precedent is still split on the issue and the Louisiana Supreme Court has not provided any guidance, the Court, holds that only a consumer or a business competitor can bring a LUPTA claim.  Since Bensco is neither a consumer nor a business competitor of VW, summary judgment is **GRANTED** as to the LUPTA claim.

18

### (5)   *Detrimental Reliance*

LSA-CC art. 1967 sets out the basis for detrimental reliance claim under Louisiana law. Pursuant to Article 1967, a promise becomes an enforceable obligation when it is made in a manner that induces the other party to rely on it to his detriment.  LSA-CC art.1967, comment (d).  The court may grant either specific performance or damages to the disappointed promisee.  In order to maintain a claim for detrimental reliance, a plaintiff must prove all of the following:(l) the defendant made a promise or representation to the plaintiff; (2) the defendant knew or should have known that the plaintiff would rely on the promise; (3) the plaintiff actually relied on that promise, to his or her detriment; and, (4) it was reasonable for the plaintiff to rely upon the defendant's promise.  *Starco Meats, Inc. v. Bryan Foods, Inc.,* 2003 WL 1522940 *4 (E.D. La. 2003)(Porteous, J)(citations omitted).  Detrimental reliance is not favored and is sparingly applied as it bars the normal assertion of rights otherwise present.  *Starco Meats, Inc*., 2003 WL 1522940 *5 *citing, Maddox v. Keen,* 33,072 (La.App. 2nd Cir. 417100),756 So.2d 1279.  *The doctrine applies only to misrepresentation of fact.  Starco Meats, Inc.,* 2003 WL 1522940, *5 *citing, Barnett v. Board of Trustees*, 00-1041 (La.App. 1st Cir. 6/22/01), 809 So.2d 184.

Accordingly, the first step of the analysis is to find that a promise or representation was made to the Plaintiff.  *Starco Meats, Inc*., 2003 WL1522940 *5.  Assumptions based merely upon vague promises are insufficient to support a claim.  *Id.*

Plaintiff relies on the following passage from the October 3, 2005, letter from a VW representative to a Bensco representative to support its claim:

> This location falls within the Area of Responsibility (AOR) of another Volkswagen Dealer.  Allowing you to operate from that location for an extended period of time potentially violates the rights of the nearby Volkswagen dealer, both under the Volkswagen Dealer Agreement

and
Louisiana law.

The next sentence provides: "[t]herefore, we have no choice but to deny you permission to operate at the Veterans Blvd location after October 27, 2005." *See* Bates No. Doc. BENSCO 02085 attached to Rec. Doc. 46. Plaintiff argues these sentences, read together represent that the reason VW was limiting Bensco's operations at the temporary site until October 27, 2005, was the possible infringement of Walker's rights. Bensco urges that at the very least, VW should have foreseen that this statement, coupled with VW's repeated expressions of sympathy for Bensco's position, would be seen as a representation that Bensco would be allowed to operate at the temporary location but for Walker's rights. Thus, Bensco takes these actions to mean once it obtained Walker's permission, it could operate at the Audi on Veterans after October 27, 2005.

The Court has reviewed the record in this matter and carefully reviewed all correspondence between the parties and does not find that these statements show a promise made to Plaintiff upon which they relied to their detriment. The statement provides only that by allowing Bensco to operate at the Veterans location  potentially violates the other VW dealer's rights and thus, VW can't allow Bensco to operate at the temporary location. This statement says nothing about consent or assuming Walker consents, or suggest any other language that  Bensco can stay after the October 27, 2005 date. While Bensco may have assumed this from the language, such an assumption made by Bensco given the language do not rise to a level of a promise by VW that Bensco would be allowed to stay longer at the location. *See Starco Meats*,  2003 WL 1522940 *5. Accordingly, as the facts show no promise was made, Plaintiff has failed to establish an essential element of the detrimental reliance claim and therefore, summary judgment is **GRANTED** on this claim in favor of VW.

Accordingly and for the foregoing reasons,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment is **GRANTED.**  All claims and causes of action are hereby dismissed with prejudice except for the Plaintiff's breach of contract claim for discourteous, deceptive, misleading, unprofessional and unethical practices which is dismissed without prejudice.


New Orleans, Louisiana this 31st day of March, 2008.

**UNITED STATES DISTRICT JUDGE**
**G. THOMAS PORTEOUS, JR.**